# UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## GREENVILLE DIVISION

| | |
|---|---|
| ATAIN SPECIALTY INSURANCE COMPANY, a Michigan corporation,<br><br>Plaintiff,<br><br>v.<br><br>P&L ENTERPRISES, LLC; a South Carolina Limited liability company; TREHEL CORPORATION, a South Carolina corporation; OVERLOOK HORIZONTAL PROPERTY REGIME HOMEOWNERS ASSOCIATION, INC.; and KENNETH and MIKI CHOCHRAN, individually and on behalf of others similarly situated,<br><br>Defendants | CASE NO.: |

## COMPLAINT FOR DECLARATORY JUDGMENT

The Plaintiff, ATAIN SPECIALTY INSURANCE f/k/a USF INSURANCE COMPANY ("USF"), files this Complaint for Declaratory Judgment against the Defendants, P&L ENTERPRISES, LLC ("P&L"), TREHEL CORPORATION ("Trehel"), OVERLOOK HORIZONTAL PROPERTY REGIME HOMEOWNERS ASSOCIATION, INC. ("Overlook"), KENNETH COCHRAN, and MIKI COCHRAN (collectively, "the Cochrans"), and in support, states:

## NATURE OF ACTION

1.      This is an action for declaratory relief under 28 U.S.C. § 2201 (2020) to establish the absence of coverage under a Commercial General Liability ("CGL") insurance policy issued to P&L, for a lawsuit arising out of alleged construction defects, brought by Overlook and the Cochrans (the "Overlook Lawsuit").

## JURISDICTION AND VENUE

2.      Jurisdiction is proper because there is diversity of citizenship and the amount in controversy exceeds $75,000, exclusive of attorney's fees, interest, and costs.

3.      Venue is proper in this district because the events giving rise to the claim occurred here. 28 U.S.C. § 1391(a)(2) (2018). More specifically, this is the district where the underlying action is venued, and where the insured risk lies. At least one of the Defendants is domiciled in this district.

4.      All conditions precedent have occurred, have been performed, or have been waived.

## THE PARTIES

5.      The Plaintiff, USF, is a Michigan corporation with its principal place of business in Michigan. USF is a surplus lines insurance company under S.C. Code § 38-45-10, *et seq.* and issued a CGL Policy to P&L.

6.      The Defendant, P&L is a South Carolina limited liability company with its principal place of business in South Carolina. P&L's members and managers are all South Carolina citizens, and none are citizens of Michigan. P&L was named as a defendant in the Overlook Lawsuit, which was filed in Anderson County, South Carolina. P&L is the named insured on the Policy issued by USF.

7.      The Defendant, Trehel, is a South Carolina corporation with its principal place of business in South Carolina. Trehel is named a defendant in the Overlook Lawsuit. Trehel has also asserted cross-claims against P&L in the Overlook Lawsuit, and also claims it is an additional insured on the Policy issued to P&L by USF.

8.      The Defendant, Overlook, is a South Carolina corporation with its principal place of business in South Carolina. Overlook is the underlying plaintiff in the Overlook Lawsuit and has asserted claims against P&L and Trehel.

9.      The Defendants, the Cocharans, are South Carolina citizens, who are domiciled in Anderson County, South Carolina. The Cocharans are the underlying plaintiffs in the Overlook Lawsuit, both as individuals and putative class representatives of other homeowners at Overlook.

## <u>COMMON ALLEGATIONS</u>

10.      ***THE OVERLOOK LAWSUIT***: The Cochrans and Overlook filed a lawsuit in the Anderson County Court of Common Pleas, Case No. 2018-CP-04-

01787, against P&L, Trehel, and others, due alleged defects in the construction of a condominium project referred to as The Overlook (the "Overlook Project"). A copy of the current operative pleading in the Overlook Lawsuit is attached as Exhibit "A" and hereinafter referred to as the "Overlook Complaint."

11.    The Overlook Project consists of seven residential buildings, containing 147 condominium units, a clubhouse, roads, parking and other amenities.

12.    The Overlook Project was constructed between 2005 and 2006. The Certificates of Occupancy on the Overlook Project were issued between February and August 2006. Accordingly, the construction was fully completed as of August 2006. The Overlook Horizontal Property Regime was under Developer control until 2011.

13.    Trehel acted as the general contractor on the Overlook Project. Outerbanks of Lake Hartwell, LLC ("Outerbanks") acted as the project Developer. Overlook identified several subcontractors that also worked on the Overlook Project, including P&L. Overlook alleges that P&L performed siding installation on the Overlook Project.

14.    Overlook alleges that while the property was under Outerbanks' control, it had a fiduciary duty, as the Developer, to ensure that the common

elements were in good condition at the time the property was turned over to the owners.

15.     Overlook alleges that the current condition of the Overlook Project evidences that at turnover, the common areas were not suitably weather resistant and were suffering from water intrusion that has damaged the common elements and individual units.

16.     Overlook alleges numerous construction defects and breaches of the following duties: failing to make the building envelope water-tight, violating building codes, failing to install exterior masonry cladding and related flashings, failing to attach lath to stud members, failing to install proper weep assemblies, failing to install through-wall flashing assemblies in the masonry and siding claddings, failing to provide window head flashings with weep holes, failing to install lap siding, failure to properly install vinyl windows, exterior doors, and masonry veneer, failing to properly install roofing components, decks, and exterior trim board, failure to hire competent subcontractors, failing to notice defective work by other trades, failing to supervise subcontractors' work and failing to correct the improper work performed by subcontractors.

17.     As a result of these alleged design and construction deficiencies, Overlook has suffered continuous water intrusion, and physical consequential

damages. Overlook alleges that these damages have occurred every year since construction and constitute "occurrences" and consequential damages.

18.     Additionally, these defects have resulted in damage to other subcontractors' and trades' work and in damages to the plaintiffs' residences and property, as well as their use and enjoyment of the residences.

19.     Overlook seeks damages for the cost to repair the subject property, consequential damages, including loss of use of the property, lost property value, punitive damages, costs and interest.

20.     Counts I and II of the Overlook Complaint are directed against Trehel for Negligence/Gross Negligence and Breach of Express and Implied Warranties. Counts IX and X are directed against the Overlook Project subcontractors, including P&L, for Negligence/Gross Negligence and Breach of Express or Implied Warranties.

21.     *TREHEL'S CROSS-CLAIMS:* In a response to the Overlook Lawsuit, Trehel filed a cross-claim against its subcontractors, including P&L. A copy of Trehel's current operative cross-claim is attached as Exhibit "B."

22.     Trehel alleges it served as the General Contractor on the Overlook project.

23.    Trehel further alleges that P&L installed siding, boxing freeze board, drip ledge, porch ceilings, building penetrations, flashings and/or other related appurtenances at the Overlook Project.

24.    Trehel asserts a claim for Negligence (Count I) against the cross-claim defendants, including P&L. Trehel alleges that P&L owed a duty to Trehel to properly, adequately and completely remodel and convert the subject property in compliance with the scope of work, specifications and industry standards and applicable build codes.

25.    Trehel alleges that if it is found to be negligent, any such negligence is merely passive and secondary to that which arose from P&L's negligence. If it is determined that the P&L was negligent, Trehel will have suffered damages in the monies it used to pay for P&L's work, and any attorney's fees and costs incurred in defending the suit against it in addition to any monies it paid out or judgments rendered against it in favor of the Plaintiffs.

26.    Trehel also asserts a claim for Breach of Contract (Count II) against P&L. Trehel alleges that if Plaintiffs' claims are proven, this also proves P&L breached its contract in that it failed to construct and convert the subject property in accordance with the applicable building codes, industry standards and manufacturers specifications.

27.    To date, however, Trehel has not been able to produce a signed contract between Trehel and P&L.

28.    Trehel also asserts a claim for Express or Implied Warranties (Count III). Trehel alleges P&L made express and implied warranties that it would perform its work in accordance with the plans and specifications, industry standards, building codes, manufacturer's recommendations and that its work or products would be fit for its intended purposes, would be merchantable, would be free of defects, and would be adequate to prevent damage to the subject property. Trehel alleges that if Plaintiffs' claims are proven, such proof will also prove that the P&L breached the warranties it made to Trehel.

29.    Trehel also asserts a claim for equitable and contractual indemnity (Count IV). Trehel alleges that due to the Contractor/subcontractor relationship between Trehel and P&L, a special relationship exists as between these parties. The Plaintiffs have brought an action against Trehel involving P&L's work. This action has or will cause Trehel damages in defending this action and subjecting it to a potential judgment.

30.    Trehel further allege that its subcontracts with P&L and other Cross-Claim Defendants all include an indemnification clause that obligates P&L and the other Cross-Claim Defendants to defend, indemnify and hold Trehel harmless for any claims arising out of the subcontractors' negligence.

31.     Trehel alleges that the contracts between it and the Cross-Claim Defendants also include a provision requiring each Cross-Claim Defendant to name Trehel as an "Additional Insured" under their respective policies.

32.     Trehel alleges it demanded that P&L defend and indemnify it pursuant to the obligations of under the subcontracts. Trehel alleges P&L failed to defend or indemnify Trehel.

33.     Trehel further alleges that Plaintiffs' alleged damages, if any, were due to and caused by the actions of P&L and not by any act or omission of Trehel, and that it is entitled to equitable indemnity from P&L.

34.     Trehel alleges that if it is liable to the Plaintiffs in any respect, then such liability arose from P&L's actions such that Trehel is entitled to full indemnification from P&L for costs and expense incurred in order to protect its interests and amounts Trehel may be required to pay the Plaintiff.

35.     ***THE POLICY:***     USF issued a Commercial General Liability Policy to P&L as the sole named insured: Policy No. LGBGL64551, effective July 30, 2008 to July 30, 2009 (the "Policy").  A certified copy of the Policy is attached as Exhibit "C."

36.     The Policy provides limits of $1,000,000 per occurrence and $2,000,000 general aggregate limit, subject to a $500 per claim deductible for property damage (Ex. C, Declarations & Supplemental Declarations).

37.    The principal insuring agreement in the Policy provides, in relevant part:

**SECTION I – COVERAGES**
**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1.    **Insuring Agreement**

  a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. …

  b.    This insurance applies to "bodily injury" and "property damage" only if:

    (1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    (2)    The "bodily injury" or "property damage" occurs during the policy period …

2.    **Exclusions**

  This insurance does not apply to:

  b.    **Contractual Liability**

    "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1)    That the insured would have in the absence of the contract or agreement; or

(2)    Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. …

**j.    Damage to Property**

"Property damage" to:

**(5)**    That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations, or

**(6)**    That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it. …

**k. Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l.    Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m.    Damage to Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)**    A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)**    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product' or "your work" after it has been put to its intended use. …

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

**4.    Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a.    Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b.    Excess Insurance**

This insurance is excess over:

**(1)**      Any of the other insurance, whether primary, excess, contingent or on any other basis:

      (a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work" …

**(2)**      Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement. …

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)**      The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)**    The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c.    Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

…

**SECTION V. – DEFINITIONS** …

**8.**    "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

    **a.**    It incorporates "your product' or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    **b.**    You have failed to fulfill the terms of a contract or agreement; if such property can be restored to use by:

    **a.**    The repair, replacement, adjustment or removal of "your product" or "your work"; or

    **b.**    Your fulfilling the terms of the contract or agreement. …

**16.**    "Products-completed operations hazard":

    **a.**    Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product' or "your work" except …

    **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

        **(a)**    When all of the work called for in your contract has been completed.

  **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

  **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed. …

17. "Property damage" means:

 **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

 **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the

"occurrence" that caused it. …

**21.** "Your product":

    **a.**    Means:

**(1)**    Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

        **(a)**    You;

        **(b)**    Others trading under your name; or

        **(c)**    A person or organization whose business or assets you have acquired; and …

    **b.**    Includes:

        **(1)**    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product; and

        **(2)**    The providing of or failure to provide warnings or instructions. …

**22.** "Your work":

    **a.**    Means:

        **(1)**    Work or operations performed by you or on your behalf; and

        **(2)**    Materials, parts or equipment furnished in connection with such work or operations.

    **b.**   Includes:

        **(1)**   Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

        **(2)**   The providing of or failure to provide warnings or instructions. …

(Ex. C, Form No. CG 00 01 12 07).

38.    The Policy also includes Form No. ICIL1130 (06/97), titled, "Continuous Or Progressive Injury Limitation" ("CPIL Endorsement"), which provides, in pertinent part:

**CONTINUOUS AND PROGRESSIVE INJURY LIMITATION**

This endorsement modifies insurance provided under the following:

    All Liability coverages in All Coverage Forms

**A.**    This insurance does not apply to the following, which is added to the EXCLUSIONS:

All "bodily injury," "property damage," … that first becomes actually or constructively known to any person prior to the effective date or after the expiration of this policy regardless of whether there is repeated or continued exposure during the period of the policy or whether the injury or damage

continues, progresses or deteriorates during the term of the policy.

**B.**    If this policy extends for more than one annual period, then the following applies:

    1.    The most we will pay for "bodily injury," "property damage," … that is continuous or progressively deteriorating, and that is first apparent during one of the periods of this policy, is the applicable limit of insurance available with respect to that one period.

    2.    The limit specified in paragraph B.1. above is the only limit that applies to all related "bodily injury," "property damage," … regardless of whether such injury or damage existed before, or continues or progressively deteriorates after, the period in which it is first apparent.

**C.**    Within the meaning of this endorsement, injury or damage is apparent when appreciable harm occurs that is or should be known to the insured, the person, or organization harmed. …

(Ex. C, Form No. ICIL1130 (06/97)).

39.     The Policy also includes Form No. USF 001 007 05-08, titled, "Combined Coverage And Exclusions Endorsement," which provides, in pertinent part:

**II.    PUNITIVE OR EXEMPLARY DAMAGES EXCLUSION**

This insurance does not apply to punitive or exemplary damages, fines or penalties. If a covered "suit" is brought against the Insured, seeking both compensatory and punitive or exemplary damages, fines, or penalties, then we will afford defense to such action, without liability, for such punitive or exemplary damages, fines or penalties.

…

(Ex. C; Form No. USF 001 007 05-08).

40.     The Policy also includes Form No. CG 21 67 12 04, titled "Fungi Or Bacteria Exclusion," which provides, in relevant part:

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I**

**- Coverage A - Bodily Injury And Property Damage Liability**:

2.     Exclusions

This insurance does not apply to:

**Fungi Or Bacteria**

**a.**     "Bodily injury" or "property damage" which

would not have occurred, in whole or in part, but

for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.**    Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption. …

**c.**    The following definition is added to the Definitions Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

…

(Ex. C; Form No. CG 21 67 12 04).

41.    The Policy also includes Form No. CG 2033 07 04, titled "Additional Insured – Owners, Lessees Or Contractors-Automatic Status When Required In Construction Agreement With You," which provides, in relevant part:

A.    **Section II - Who Is An Insured** is amended to include as an additional insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

1.    Your acts or omissions; or

2.    The acts or omissions of those acting on your behalf; in the performance of your ongoing operations for the additional insured.

A person's or organization's status as an additional insured under this endorsement ends when your operations for that additional insured are completed.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to:

   **2.** "Bodily injury" or "property damage" occurring after:

      a.    All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

      b.    That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project. …

(Ex. C, Form No. CG 2033 07 04).

42.     USF agreed to defend P&L for the Overlook Lawsuit, including Trehel's crossclaims under a reservation of rights, including but not limited to a reservation of rights to seek a declaratory judgment. USF disclaimed Trehel's tender for a defense and indemnification.

## COUNT I – NO COVERAGE

## CPIL ENDORSEMENT

43.     USF incorporates paragraphs 1-42 as its allegations in this paragraph 43 of Count I.

44.     The Policy was in effect from July 30, 2008 through July 30, 2009.

45.     The Certificates of Occupancy on the Overlook Project were issued between February 2006 and August 2006.

46.     Overlook and the Cochrans claimed they discovered the damage to the Overlook Project no earlier than 2010.

47.     No "property damage" was discovered by any person prior to July 30, 2009.

48.     Under the Policy's CPIL Endorsement, there is no coverage unless the "property damage" was first discovered during the policy period.

49.     Since the alleged "property damage" was not discovered until after the Policy terminated, there is no coverage under the Policy. Consequently, USF

has no obligation to defend or indemnify P&L for the Overlook Lawsuit or the Trehel cross-claim.

## COUNT II – NO COVERAGE
## FUNGI OR BACTERIA EXCLUSION

50.    USF incorporates its allegations in paragraphs 1-42 as paragraph 50 of Count II.

51.    To the extent any of the alleged "property damage" in the Overlook Lawsuit arises out of the exposure to mold or mildew, there is no coverage under the Policy's Fungi or Bacteria Exclusion.

52.    Consequently, USF has no obligation to defend or indemnify P&L to the extent any damages alleged in the Overlook Lawsuit arise out of the exposure to mold or mildew.

## COUNT III – NO COVERAGE
## BUSINESS RISK EXCLUSIONS

53.    USF incorporates its allegations in paragraphs 1-42 as paragraph 53 of Count III.

54.    There is no coverage for Trehel's Cross-Claims under the Policy's Contractual Liability Exclusion (Coverage Part A.2.b.). To the extent Trehel seeks damages for contractual or equitable indemnity or breach of contract, the Policy does not cover such claims. Furthermore, the as there is no signed contract or

agreement between Trehel and P&L, the conditions of the "insured contract" exception to the Contractual Liability Exclusion are not met.

55.    There is no coverage to the extent the Overlook Lawsuit seeks damages for "property damage" to any real property on which P&L or its subcontractors performed any work or operations under Coverage Part A.2.(j)(5).

56.    There is also no coverage to the extent the Overlook Lawsuit seeks damages for "property damage" to any property that must be restored, repaired or replaced because P&L's work was incorrectly performed on it under Coverage Part A.2.(j)(6).

57.    There is no coverage to the extent that the Overlook Lawsuit seeks damages to P&L's product under Coverage Part A.2.(k) ("Your product Exclusion").

58.    There is no coverage to the extent the Overlook Lawsuit seeks damages to P&L's work, arising out of it and included in the products-completed operations hazard under Coverage Part A.2.l. ("Your work Exclusion").

59.    There is no coverage to the extent that the Overlook Lawsuit seeks damages for impaired property under Coverage Part A.2.m. ("Impaired Property Exclusion").

## COUNT IV – NO COVERAGE
## PUNITIVE DAMAGES EXCLUSION

60.    USF incorporates its allegations in paragraphs 1-42 as paragraph 60 of Count IV.

61.    The Overlook Lawsuit seeks punitive damages due to the alleged conduct of the defendants, including Trehel and P&L.

62.    The Policy includes a Punitive Damages Exclusion under the Policy's Combined Coverage and Exclusions Endorsement.

63.    Consequently, there is no coverage for the claims for punitive damages in the Overlook Lawsuit.

## COUNT V – NO COVERAGE
## NO PROPERTY DAMAGE

64.    USF incorporates its allegations in paragraphs 1-42 as paragraph 64 of Count IV.

65.    There is no coverage under the Policy to the extent the Overlook Lawsuit seeks to recover the costs to repair or replace P&L's own work, including the removal of other property to facilitate the repair or replacement of P&L's work.

66.    The cost to repair or replace P&L's work does not constitute "property damage" under the Policy. Additionally, the costs to remove and replace other

parts of the Overlook Project to effectuate the repair or replacement of P&L's work does not constitute "property damage."

67.     Alternatively, to the extent the Overlook Lawsuit alleges any "property damage" as defined by the Policy and South Carolina law, USF is only obligated to pay for its *pro rata* share of such damages based on its time on the risk.

68.     Accordingly, there is no coverage under the Policy, and consequently no duty to defend or indemnify P&L. Alternatively, to the extent there is any covered "property damage," USF's indemnity obligations are limited by its *pro rata* time on the risk.

## <u>COUNT VI-TREHEL IS NOT AN ADDITIONAL INSURED</u>

69.     USF incorporates its allegations in paragraphs 1-42 as paragraph 69 of Count VI.

70.     Trehel has claimed it qualifies as an insured under the Policy.

71.     Trehel does not meet any definition of WHO IS AN INSURED under Section II of the Policy.

72.     Trehel also does not qualify as an additional insured under the Policy's Automatic Additional Insured Endorsement.

73.     There is no executed written contract between Trehel and P&L.

74.     The Additional Insured Endorsement only confers additional insured

status while P&L's work is ongoing. P&L's work was completed approximately two years prior to the inception of the Policy.

75.     The Additional Insured Endorsement also excludes coverage for any property damage occurring after P&L's work was completed on the Project. P&L completed its work nearly two years prior to the inception of the Policy.

76.     Trehel does not qualify as an additional insured. Consequently, USF has no obligation to defend or indemnify Trehel for the Overlook Lawsuit.

## COUNT VII – NO COVERAGE
## INTEGRATED POLICY PROVISIONS

77.     USF incorporates its allegations in paragraphs 1-42 as paragraph 77 of Count VII.

78.     Atain fully incorporates by reference each and every term, condition, exclusion and endorsement contained within Exhibit C.

79.     To the extent any additional term, condition, exclusion or endorsement within the Policy applies to the allegations, facts, or circumstances as discovered in this action or the Overlook Lawsuit, Atain seeks a declaration to the extent such terms, conditions, exclusions or endorsements eliminate or reduce the available coverage for the Overlook Lawsuit.

## REQUESTED RELIEF

**WHEREFORE**, USF respectfully requests this Court:

a.   Take jurisdiction and adjudicate the rights of the parties under the Policy;

b.   Find that USF has no obligation to defend or indemnify P&L for the Overlook

Lawsuit and Trehel cross-claim under the Policy;

c.   Find that Trehel does not qualify as an additional insured under the Policy and USF has no obligation to defend or indemnify Trehel for the Overlook Lawsuit; and

d.   Award USF all costs it incurs to prosecute this action, as well as any other relief that this Court deems equitable, just, and proper.

Respectfully submitted,

THE LAW OFFICES OF L.W. COOPER JR.

*/s/ Lindsey W. Cooper Jr.*
Lindsey W. Cooper Jr. (D.S.C. Bar No. 9909)
36 Broad Street
Charleston, SC  29401
P: 843-375-6622
F: 843-375-6623
Email: lwc@lwcooper.com

*Attorney for Atain Spec. Ins. Co.*

Charleston, South Carolina
June 4, 2021

4830-7102-7679, v. 1